## THE FIRST PARISH IN MEDFORD *versus* The Inhabitants of MEDFORD.

In 1768 the inhabitants of a town, then administering their parochial and municipal concerns under their organization as a town, voted to purchase a lot of land to build a meetinghouse upon, and the same was conveyed to the town in fee simple, *the deed not expressing any trust nor any limitation or restriction as to the use* of the land. They soon afterward erected a meetinghouse upon the land, and in 1795 they also built a schoolhouse upon it. In 1822 they leased small parcels of the land for the term of twenty years to erect horse-sheds upon. In 1824, upon the incorporation of a portion of the inhabitants as a religious society, the residue became the First Parish. In 1836 the town purchased the right of the lessee of one of the horse-shed parcels and built thereon an addition to the schoolhouse. It was *held*, that the town, whilst it continued to act in the double capacity of town and parish, had a right to appropriate the land either to municipal or to parochial purposes, and from time to time to alter the appropriation ; that upon the creation of the second religious society, the portion of the land then in use for the school remained vested in the town, and the residue became vested in the First Parish ; and that the extent of the appropriation for the school included not only the land actually covered by the schoolhouse, but so much of the land adjoining as was reasonably necessary and convenient for the occupation and enjoyment of the

First Parish    schoolhouse, that is, enough to secure convenient access, and to secure light and
in Medford      air on all sides of the house, with any rights of way to it enjoyed by the town.
     *v.*
Medford.

WRIT of entry to recover a parcel of land in Medford, called the meetinghouse lot.

Upon a case stated it appeared, that at a town meeting in Medford on the 11th of July, 1768, it was voted, that certain persons " be a committee to purchase five eighths of an acre of land where the dwellinghouse that Mr. William Tufts at present lives in, stands, in order to build a meetinghouse upon, provided it costs no more than £53, 6s. 8d., provided also, that the lane belonging to Mr. Thomas Secombe, adjoining the same, shall always be common for the use and benefit of said town of Medford," &c.

At a town meeting on the 11th of August, 1768, it was voted to accept the report of the committee, viz. to purchase five eighths of an acre of land (belonging to John Bishop) where the dwellinghouse that Mr. William Tufts lives in, stands, for to erect a meetinghouse for public worship."

On the 27th of October, 1768, Bishop, in consideration of £53, 6s. 8d., paid by James Wyman, treasurer of the town of Medford, by his deed of that date, conveyed to the treasurer and his successors, to the use of the town, the piece of land above mentioned to have been purchased by the committee, in fee simple.   At the same time Secombe, in consideration of the good will he had for the inhabitants of the town, and his desire of accommodating them with a plot of land for building a meetinghouse, by his deed of that date, conveyed to the town, in like manner and form, a small piece of land about twelve feet wide, adjoining the land purchased of Bishop, and extending from the street in front, as far back as the Bishop lot extended.   This parcel includes the lane mentioned in the vote of the 11th of July, 1768.   Bishop and Secombe reserved to themselves respectively, and their heirs, a right of way over the lands thus purchased by the town, to their lands situate in the rear thereof, which ways are still used and enjoyed by their respective heirs or assigns.

The meetinghouse was built in 1769, partly on the land purchased of Bishop and partly on that conveyed by Secombe.

The demanded premises have never been fenced from the street in front, and are subject to two different passage ways, as reserved in the deeds of Bishop and Secombe, for teams and carriages to pass and repass in different directions.

The town never had any interest or occasion for a passage way in or over the lands mentioned in the deeds of Bishop and Secombe, for any purpose but that of going to and about the meetinghouse, until the schoolhouse was built, in 1795.

At a town meeting on the 5th of June, 1795, it was " voted to build a schoolhouse behind the meetinghouse." A schoolhouse was built by the town in the course of that year, on the lot purchased of Bishop, and has been used and occupied as such by the town ever since.

In 1822 the town appointed a committee to sell rights for horse-sheds back of the meetinghouse, for a term not exceeding twenty years, and six rights were sold for the term of twenty years from the 1st of December, 1822. Sheds were built by the purchasers, on the northerly or back line of the meetinghouse lot, on the land purchased of Bishop.

The town of Medford consisted of one parish only, and all business of a parochial nature was transacted by the town, and all moneys for building and repairing the meetinghouse and for the support of public worship were raised in town meeting, and were assessed and collected together with the moneys raised for municipal purposes, and paid into the town treasury in gross, until the year 1824, when a division of the town took place and a part of the inhabitants were incorporated by the name of The Second Congregational Society in Medford ; whereupon the remaining part of the inhabitants were organized as the First Parish in Medford.

Thacher Magoun purchased one of the horse-shed lots and built a shed upon it ; and in 1836 the town purchased of him his shed and lot, pulled down the shed and made an addition to the schoolhouse, on the land purchased of Bishop, including that whereon the shed of Magoun was built ; and the town still hold and occupy the same, to the exclusion of the First Parish. The children attending school at this schoolhouse have been accustomed and still continue to pass and repass and play .

upon the land about the meetinghouse, and the militia compa-
nies of the town used frequently to meet and parade there.

If the Court should be of opinion that the demandants were
entitled to recover the whole or any part of the land demanded,
the tenants were to be defaulted, and judgment to be rendered
therefor.

*Choate* and *A. W. Austin*, for the tenants, said they claimed
the land covered by the schoolhouse, (including the addition
made in 1836,) together with so much of the adjacent land as
was reasonably necessary for the occupation of the school-
house. *First Parish in Shrewsbury* v. *Smith*, 14 Pick. 297 ;
*Milton* v. *First Parish in Milton*, 10 Pick. 447 ; *Humphrey*
v. *Whitney*, 3 Pick. 167 ; *First Parish in Medford* v. *Pratt*,
4 Pick. 227 ; *Emerson* v. *Wiley*, 10 Pick. 317.

*Hoar* and *A. Bartlett*, for the demandants, contended that
from the votes it appeared that the whole of the land was
originally parish property ; and that the use of a part of it for
a school was merely a permissive enjoyment by the town,
which gave them no title. *Medford* v. *Pratt*, 4 Pick. 222 ,
*Emerson* v. *Wiley*, 10 Pick. 323 ; *Sprague* v. *Snow*, 4 Pick.
54.

SHAW C. J. delivered the opinion of the Court. This is
an action brought to recover the whole parcel of land in Med-
ford, heretofore called the meetinghouse lot, and the question
is, whether the town have title to the same, or any part of it.

The facts are briefly these. In 1768 the inhabitants of
Medford, like most of the towns in the province, constituted
but one parish, and administered their municipal and parochial
concerns, under one organization as a town. They then took
measures to obtain a lot of land, for the purpose, as expressed
in their votes, of building a meetinghouse upon ; a purchase was
made by a committee chosen for the purpose, and the convey-
ances were made by deed to the treasurer, (named,) to the use
of the inhabitants of the town, and thereby and by the operation
of the statute of uses, the land became vested in fee in the town,
in its corporate capacity. In this deed no trust was expressed,
and no limitation or restriction, in the use of the land, to any
particular purpose was suggested. A meetinghouse was erect-
ed on the lot, leaving a large vacant space. In 1795, the

own voted to build a schoolhouse on part of the lot, and it was built, and it continued to be used, for a town school, until the division of the town into two parishes in 1824. Several points applicable to this case, were decided in a former case, substantially between the same parties. *First Parish in Medford* v. *Pratt*, 4 Pick. 222.

By force of the conveyances above stated, this estate became vested in fee in a corporation, exercising the functions both of a town and a parish ; and although the leading purpose express ed in their votes was, to erect a meetinghouse, which was clearly a parochial purpose, yet this did not restrain them from altering that purpose, in whole or in part. It depended on their own will, whilst they thus remained acting both as a town and a parish, to determine how such estate should be used, and to alter and change the use of it, from time to time, as their own views of their interest and convenience might require. If they had chosen to remove the meetinghouse, and to sell the land, or to appropriate it to other public uses, within their jurisdiction as such corporation, as for a burying ground or a town house, we think they had a right to do so.

Thus this land was held until 1795, when the town voted to erect a schoolhouse upon a part of it. As the support and maintenance of schools was one of the corporate duties of towns, this vote must be taken to have been passed in the execution of that duty, and must be deemed to be an appropriation, by the corporation, of that part of its land, to a municipal use. There being no time limited, for which this land should be so used, it was to remain thus appropriated, until the use should be changed by some other corporate act, that is, indefinitely.

Subsequently, and before the town was divided into two parishes, the town, still exercising the functions of both a town and a parish, let out certain lots, for the term of twenty years, to erect horse-sheds upon, to those who should attend there on Sundays and other public days. This being incident to the attendance at the meetinghouse, for public worship, appears to us to be an appropriation of the land, by the corporation, to its own use as a parish ; in other words, to a parochial use. Indeed, without this proceeding, the Court are of opinion, that

the whole lot having been originally acquired by the corporation to erect a meetinghouse upon, and the whole having for some years been appropriated to that use, the whole lot must be deemed to be held by the corporation in its parochial capacity, unless altered or changed by vote of the town, or other corporate act.

Such was the state of the corporate estate held by the town of Medford, when the new parish was incorporated. By force of a general law, all the remainder of the inhabitants of the town not included in the newly incorporated parish, constituted a parish, called the First Parish, and by law became successors of the town in all rights of property, which the town before held in its parochial capacity. All other property remained vested in the town. *St.* 1786, *c.* 10, § 4, 5.

Upon these principles, the Court are of opinion, that that portion of the land, which had been appropriated by the corporation, for a school, remained vested in the town, and all the residue of the land became vested in the First Parish. In determining the extent of the appropriation for a school, the Court are of opinion, that it includes not only the land actually covered by the house, but such part of the land adjoining, as may be considered reasonably necessary and convenient for the occupation and enjoyment of the schoolhouse, that is, enough to secure convenient access and to secure light and air on all sides of the house, with any rights of way to it, enjoyed by the corporation.

The rights of the two corporations became fixed by the act, incorporating a second parish. The town, after that, had no power to appropriate any land to municipal use, it had ceased to exist in the double capacity. The act of the town therefore, in taking more of the land, to enlarge the schoolhouse, in 1836, was not warranted by law, and was void. The fee in that part of the land was already vested in the First Parish and the estate could not be affected by the act of the town.

*Judgment for the demandants.*